1   Nicholas A. Carlin, State Bar No. 112532
    R. Scott Erlewine, State Bar N. 249056
2   Brian S. Conlon, State Bar No. 303456
    PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
3   39 Mesa Street, Suite 201
    The Presidio
4   San Francisco, CA 94129
    Telephone: 415-398-0900
5   Fax:        415-398-0911
    Email:      nac@phillaw.com
6               rse@phillaw.com
                bsc@phillaw.com
7

8   Attorneys for Plaintiff

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                       WESTERN DIVISION

12
    DIANA ROCHE, GUSTAVO HERRERA,        | **Case No.**
13  AMANDA ROBINSON, DEBBIE              |
    ANDERSON O'NEAL, MONIKA              | **CLASS ACTION**
14  BARTELS-NEWMAN, and ISABEL           |
    PARDO individually and on behalf of all | **COMPLAINT FOR VIOLATIONS OF**
15  others similarly situated,           | **THE CALIFORNIA LABOR CODE,**
                                         | **UNFAIR COMPETITION LAW AND**
16          Plaintiffs,                  | **RELATED CAUSES OF ACTION**
17  vs.
                                         | **DEMAND FOR JURY TRIAL**
18
    LITHIA MOTORS INC., a corporation;
19  DCH AUTO GROUP (USA), INC., a
    corporation; DCH NORTH AMERICA,
20  INC., a corporation; DAH CHONG HONG
    TRADING CORPORATION, a corporation;
21  DCH SIMI VALLEY, INC., a corporation,
    dba DCH TOYOTA OF SIMI VALLEY;
22  DCH (OXNARD), INC, a corporation, dba
    DCH HONDA OF OXNARD; DCH
23  MANAGEMENT SERVICES, INC., a
    corporation; DCH CA TEAM MEMBER
24  SERVICES, LLC, a limited liability
    company; and LITHIA MOTORS
25  SUPPORT SERVICES, INC., a corporation.
            Defendants.
26
27
28

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

CLASS ACTION COMPLAINT

Plaintiffs Diana Roche, Gustavo Herrera, Amanda Robinson, Debbie Anderson O'Neal, Monika Bartels-Newman, and Isabel Pardo ("Plaintiffs"), individually and on behalf of all others similarly situated, allege as follows:

## I.    INTRODUCTION

1.     This is an action for wage and hour violations brought against Lithia Motors, Inc. and certain of its subsidiaries which collectively own and/or operate fourteen "DCH" automobile dealerships in Southern California (collectively "DCH").  Plaintiffs, who are or during the past four years have been employed at Defendants' dealerships in Simi Valley, California (DCH Toyota of Simi Valley) and Oxnard, California (DCH Honda of Oxnard), bring this action individually and on behalf of all other similarly situated employees at each of Defendants' California dealerships.

2.     Defendants did not want to pay premium wages (for missed meal and rest breaks) to their auto dealership employees.  But instead of simply permitting their employees to take meal and rest breaks, Defendants achieved their goal by falsifying time records to make it appear that employees were getting breaks, even though Defendants knew they were not.

3.     In addition to denying their employees proper meal and rest breaks, Defendants engaged in numerous other Labor Code violations, including failing to compensate employees for all hours worked, failing to properly pay overtime compensation, and engaging in false and fraudulent recordkeeping practices.

## II.    JURISDICTION AND VENUE
### SUBJECT MATTER JURISDICTION

4.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  The amount in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, there are 100 or more class members, and there is minimal diversity because Plaintiffs and other members of the Class are citizens of California and at least one defendant is a citizen of different State or a foreign state as required by 28 U.S.C. § 1332(d)(2).

5.     Plaintiff Diana Roche is a resident of Moonpark, California.

6.     Plaintiff Gustavo Herrera is a resident of Chatsworth, California.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

7.     Plaintiff Amanda Robinson and Isabel Pardo are residents of Oxnard, California.

8.     Plaintiff Debbie Anderson O'Neal and Monika Bartels-Newman are residents of Simi Valley, California.

9.     Defendant Lithia Motors, Inc. ("LITHIA"), is, on information and belief, an Oregon corporation with its principal place of business in Oregon.  It is thus a citizen of Oregon for purposes of 28 U.S.C. §1332(d)(2)(C).

10.    Defendant DCH Auto Group (USA), Inc. ("DCH USA") is, on information and belief, a Delaware corporation, with its principal place of business in New Jersey and is a wholly-owned subsidiary of LITHIA.  It is thus either a citizen of Delaware or New Jersey for purposes of 28 U.S.C. § 1332(d)(2)(C).

11.    DCH North America, Inc. is, on information and belief, a Delaware corporation, with its principal place of business in New Jersey and is a wholly-owned subsidiary of LITHIA. It is thus either a citizen of Delaware or New Jersey for purposes of 28 U.S.C. § 1332(d)(2)(C).

12.    Defendant Dah Chong Hong Trading Corporation is, on information and belief, a New Jersey corporation with its principal place of business in New Jersey and is a wholly-owned subsidiary of LITHIA.  It is thus a citizen of New Jersey for purposes of 28 U.S.C. § 1332(d)(2)(C).

13.    Defendant DCH Simi Valley Inc. ("DCH Simi Valley") is a California corporation with its principal place of business in Simi Valley, California and is a wholly-owned subsidiary of LITHIA.

14.    Defendant DCH (Oxnard), Inc. ("DCH Oxnard") is a California corporation with its principal place of business in Oxnard, California and is a wholly-owned subsidiary of LITHIA.

15.    Defendant DCH CA Team Member Services, LLC is, on information and belief, a Delaware limited liability company, with its principal place of business in California and is a wholly-owned subsidiary of LITHIA.  It is thus a citizen of Delaware for purposes of 28 U.S.C. § 1332(d)(2)(C).

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

16.     Defendant DCH Management Services, Inc. is, on information and belief, a New Jersey corporation, with its principal place of business in New Jersey and is a wholly-owned subsidiary of LITHIA.  It is thus a citizen of New Jersey for purposes of 28 U.S.C. § 1332(d)(2)(C).  (The Defendants identified in paragraphs 10-16 are hereafter referred to as the "DCH Entities.")

17.     Defendant Lithia Motors Support Services, Inc. is, on information and belief, an Oregon corporation, with its principal place of business in Oregon and is a wholly-owned subsidiary of LITHIA.  It is thus a citizen of Oregon citizen for purposes of 28 U.S.C. §1332(d)(2)(C).

## **PERSONAL JURISDICTION**

18.     This Court has personal jurisdiction over Defendants.  As set forth above, DCH Simi Valley and DCH Oxnard are California corporations with their principal place of business in Simi Valley and Oxnard, California.  At least until Fall 2014, DCH USA owned and/or operated auto dealerships in New York, New Jersey and Southern California, including operating the fourteen (14) Southern California dealerships at issue in this case (the "Dealerships"):

- DCH Acura of Temecula
- DCH Tustin Acura
- DCH Audi Oxnard
- DCH Chrysler Jeep Dodge of Temecula
- DCH Gardena Honda
- DCH Honda of Oxnard
- DCH Honda of Temecula
- DCH Lexus of Oxnard
- DCH Lexus of Santa Barbara
- DCH Scion of Simi Valley
- DCH Torrance Scion
- DCH Toyota of Oxnard

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

3

- DCH Toyota of Simi Valley

- DCH Toyota of Torrance

19.     Defendant LITHIA acquired DCH USA in or about Fall 2014.  On information and belief, at the time of the acquisition, LITHIA was the eighth largest automobile dealership group in the country with 101 dealerships in at least 13 different states, before its purchase of the DCH Entities and other DCH assets.  At all times following the acquisition, LITHIA owned and/or operated the Dealerships.

20.     This action arose out of each Defendant's business in this judicial district.

21.     LITHIA and DCH USA and their subsidiaries have sufficient minimum contacts with California and this judicial district so that they are amenable to service of process under California's long-arm statute, so that requiring them to respond to this action would not violate due process.

22.     Plaintiffs are informed and believe, and thereon allege, that each Defendant named in this Complaint is in some manner responsible for the wrongs and damages alleged below, and in so acting was functioning, at all relevant times, as the joint employer of plaintiffs and/or as the agent, servant, partner, alter ego and/or employee of the other Defendants, and in doing the actions described below, was acting within the course and scope of its authority as such joint employer, agent, servant, partner, and/or employee with the permission and consent of each of the other Defendants.  Defendants further comprise a single enterprise.  All acts herein alleged were approved of and ratified by the other Defendant.

### VENUE

23.     Venue is proper in this district under 28 U.S.C. § 1391(b) because each Defendant's improper conduct alleged in this Complaint occurred in, was directed from, and/or emanated from, in whole or in part, this judicial district.

### III.     FACTUAL ALLEGATIONS

24.     LITHIA and DCH employ numerous individuals in the Dealerships in hourly, non-exempt positions including (a) clerical/office workers (*e.g.*, receptionists, warranty administrators, customer service representatives); (b) service writers/advisors; and (c)

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

salespeople.  LITHIA and DCH also employ non-exempt automotive mechanics/technicians, but they are not part of this class action.

25.     Employees who work on commission, such as service writers/advisors and salespeople, *may* be exempt from overtime pay requirements, pursuant to California's Industrial Wage Commission Wage Orders 4 and 7 (the "Wage Orders").  However, even assuming that an overtime exemption applies, such employees are *not* exempt from any of the other Labor Code protections addressed herein, such as meal and rest break requirements.

26.     LITHIA and DCH USA, are joint employers of each of the employees of the Dealerships, including Plaintiffs and Class Members.  While it appears that LITHIA and DCH USA have organized subsidiary entities which may nominally act as employers of at least some of the Dealership employees, such as in the case of DCH Simi Valley and DCH Oxnard, in fact, LITHIA and DCH USA exercise control over the wages, hours and working conditions of all Dealership employees and suffer or permit them to work there.  For example, DCH USA's website states that "California is home to 17 DCH Auto Group new and used car dealerships" and lists "DCH Auto Group" as its "Contact" (http://www.dchauto.com/california-dealerships.htm) and does not state or suggest anywhere that the Dealerships are not owned, operated, and/or controlled by LITHIA and DCH USA; the California DCH entities, including DCH Simi Valley and DCH Oxnard, in their filings with the California Secretary of State, list the same individual as their agent for service of process; the employee handbook is the same for all employees of all the Dealerships; and managers at the individual Dealerships refer to LITHIA and DCH USA as "corporate" and take their orders from them.  In particular, employees working at DCH Toyota of Simi Valley were informed in or about 2010 that "DCH corporate" (meaning DCH USA, before it was acquired by LITHIA), would no longer tolerate paying premium wages for missed meal and rest breaks.

27.     Isabel Pardo is a former employee of DCH Oxnard, which was her joint employer, along with DCH USA and LITHIA.

28.     All other Plaintiffs are current or former employees of DCH Simi Valley, which is/was their joint employer along with DCH USA and LITHIA.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

## THE 'ZERO TOLERANCE FOR PREMIUM PAY' POLICY

29.     Defendants' custom, policy and practice has at all relevant times been not to pay premium pay to its employees when they have not been provided meal and rest periods.

30.     Starting in or about 2010, DCH USA implemented a policy, which it communicated to all the Dealerships, that it would no longer tolerate paying premium wages for missed or untimely meal or rest breaks.  Under this policy, all non-exempt employees (including commission sales people who may be exempt from overtime laws, but who are not exempt from meal and rest break laws) were required to clock out before the end of the fifth hour of each shift – without regard to whether they actually stopped working at that time – to provide the appearance that they were taking code compliant meal breaks.  Employees who failed to clock out "on time" for meal breaks were disciplined.  This policy was continued after LITHIA acquired DCH USA.

31.     In furtherance of this policy, Defendants instructed and required clerical employees to alter the time records of workers who clocked out late for meal breaks, or who did not take a meal break and did not clock out at all, to falsely indicate that they clocked out within the first five hours of work.

32.     Defendants took no action to actually provide compliant meal breaks, such as to provide scheduling that would allow employees to take compliant meal breaks, and instead required or suffered employees to continue working off the clock.

33.     Even on the occasions when Plaintiffs and the other Dealership employees were able to take a meal break within the first five hours of work, the breaks provided to them were generally not for a full 30 minutes and were not "off-duty."  Rather, Plaintiffs were required to perform their job duties during these purported breaks.

34.     At all times relevant hereto, rest breaks were not provided to Plaintiffs and the Dealership employees.  Defendants were aware that employees were, more often than not, too busy with customers and/or their vehicles to take rest breaks and took no action to provide scheduling that could make it possible for employees to take them.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

**OTHER VIOLATIONS**

35.     Defendants failed to pay overtime for hours worked in excess of eight hours per day or 40 hours per week in violation of Labor Code sections 510, 1194, and 1198.  In addition, service writers and salespeople often worked very long hours, *e.g.*, ten to twelve hours per day. Plaintiffs are informed and believe that there were work weeks in which some of these employees did not earn sufficient commissions (or salary plus commissions) to qualify for the commissioned sales overtime exemption of paragraph 3(D) of the Wage Orders.  That is, the employees did not earn sufficient commissions that more than half their earnings came from commissions, and/or their total compensation did not exceed one and one-half times the minimum wage.  Service writers/advisors and salespeople are entitled to overtime compensation for all work weeks in which they did not qualify for the exemption.

36.     In addition, all employees are entitled to compensation for any and all time spent working off-the-clock when required to clock out and continue working through their purported meal period and/or when they were required or suffered to continue working at the end of a shift after clocking out.

37.     Plaintiffs are informed and believe that the foregoing policies and practices apply at each of the Dealerships and applied both before and after LITHIA acquired the DCH Entities.

IV.     **FACTS SPECIFIC TO INDIVIDUAL PLAINTIFFS**

**DIANA ROCHE**

38.     Plaintiff Diana Roche was employed by Defendants as a receptionist.  She worked at the DCH Toyota of Simi Valley dealership from approximately January 2013 until March 2015.  Ms. Roche was a non-exempt hourly employee and was paid between $12.50 and $14.50/hour.  At all relevant times she was a non-exempt employee.

39.     Ms. Roche generally worked between eight and nine hours a day, five days a week.

40.     Ms. Roche was only provided a 30-minute, off-duty meal break when someone else was available to cover her desk.  At least once a week, and usually more than that, she was not able to take a meal break at all, but was required to clock out for lunch within the first five

hours of her work day even if she was not actually taking a meal break. That is, Defendants routinely required or suffered Ms. Roche to perform work off the clock. She was never compensated for missed meal breaks or for the labor she performed off the clock.

41.     Ms. Roche, like other DCH employees, had her time records altered and falsified by Defendants to falsely show that she took her meal breaks on time.

42.     Ms. Roche was generally not provided a 10-minute rest break for each four hours worked, or major fraction thereof. She was never compensated for the missed rest breaks.

43.     Among Ms. Roche's other duties at DCH, she was directed by management, and did, adjust the clock-in and clock-out times for other employees to ensure that their payroll records showed that they all clocked out for meal breaks in a timely fashion and did not work overtime (or worked less overtime than they actually did) even when they did not in fact take a meal break or did work overtime.

44.     At her managers' instructions, Ms. Roche logged in to DCH's Time Saver time clock system and changed the clock-in and clock-out times for other DCH employees. For instance, if an employee's time records showed that he did not clock out for lunch at all, Ms. Roche would change the data to show that he did clock out within five hours of his start time and that he clocked back in one hour later. Or, if an employee's time records showed he clocked out for lunch, but it was more than five hours after he clocked in to start the day, Ms. Roche would change the clock out time to show a time within the first five hours. If someone didn't clock out at the end of the day, her managers instructed her to clock them out after six hours, even if they worked much longer than that. If an employee's time records reflected that they worked more than eight hours in a given day, her managers instructed her to alter their clock out time to show that they worked eight hours exactly, even if they worked much longer than that.

45.     Ms. Roche thought that these practices were wrong, but DCH management insisted that she had to do it as part of her job.

46.     At times, Defendants required or suffered Ms. Roche to perform work off the clock at the end of the shift. Her managers instructed her to clock out and to continue working

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

until the employee working the next shift arrived.  She was never compensated for this off-the-clock-work.

47.   Even when Ms. Roche recorded the overtime hours she worked, Defendants rarely paid her for that time because DCH routinely falsified her time records to indicate that she did not.

## GUSTAVO HERRERA

48.   Gustavo Herrera has been employed by Defendants as an internet sales manager. He has worked at the DCH Toyota of Simi Valley dealership from approximately February 2008 to the present.

49.   Mr. Herrera is partly paid on commission, but is a non-exempt employee (with the possible exception for overtime purposes).  Specifically, Mr. Herrera was paid on a modified commission basis.  For the first pay period of the month he was paid an hourly wage, ranging from $8.50 to $13.50/hour.  At the end of the month, Defendants add up his commission and subtract the first half month's pay from the total and pay that as Mr. Herrera's second-half of the month pay.

50.   Mr. Herrera generally worked eight to ten hours a day between five and seven days a week.  He frequently worked more than eight hours a day and more than 40 hours per week.

51.   Mr. Herrera is informed and believes that there were numerous work weeks in which he did not earn sufficient commissions to qualify for the commissioned sales overtime exemption of paragraph 3(D) of the Wage Orders.  That is, during certain work weeks, commissions did not constitute more than half of his total earnings, and/or his total compensation did not exceed one and a half times the minimum wage.  Mr. Herrera was never paid for overtime.

52.   Mr. Herrera was generally not provided a 30-minute, off-duty meal break.  He was required to clock out for a purported meal period within the first five hours of his work day even when he was not actually taking a meal break.  That is, Defendants routinely required or

suffered Mr. Herrera to perform work off the clock.  He was never compensated for the missed meal breaks or for the labor he performed off the clock.

53.     Mr. Herrera, like other DCH employees, had his time records altered and falsified by Defendants to falsely show that he took his meal breaks on time.

54.     Mr. Herrera was generally not provided a 10-minute rest break for each four hours worked, or major fraction thereof.  He was never compensated for missed rest breaks.

## <u>AMANDA ROBINSON</u>

55.     Plaintiff Amanda Robinson was employed by Defendants as a service advisor (*i.e.*, her job was to encourage Defendants' customers to enter into contracts to have their vehicles serviced) at the DCH Toyota of Simi Valley dealership from approximately April 2010 until June 2016.

56.     Ms. Robinson was paid partly on commission, but was a non-exempt employee (with the possible exception for overtime purposes).

57.     Ms. Robinson's shifts generally lasted eleven to twelve hours, and she typically worked five days a week.  She frequently worked more than eight hours a day and more than 40 hours per week.

58.     Ms. Robinson is informed and believes that there were numerous work weeks in which she did not earn sufficient commissions to qualify for the commissioned sales overtime exemption of paragraph 3(D) of the Wage Orders.  That is, during certain work weeks, commissions did not constitute more than half of her total earnings, and/or her total compensation did not exceed one and a half times the minimum wage.

59.     Ms. Robinson was never paid for overtime.

60.     Ms. Robinson was generally not provided a 30-minute, off-duty meal break.  She was required to clock out for a purported meal period within the first five hours of her work day even if she was not actually taking a meal break.  That is, Defendants routinely required or suffered Ms. Robinson to perform work off the clock.  She was never compensated for the missed and untimely meal breaks or for the labor she performed off the clock.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

61.     Ms. Robinson, like other DCH employees, had her time records altered and falsified by Defendants to falsely show that she took her meal breaks on time.

62.     Ms. Robinson was generally not provided a 10-minute rest break for each four hours worked, or major fraction thereof.  She was never compensated for the missed rest breaks.

63.     At times, Defendants required or suffered Ms. Robinson to perform work on complimentary services.  She was not compensated for this work.

### DEBBIE ANDERSON O'NEAL

64.     Plaintiff Debbie Anderson O'Neal was employed by Defendants as a cashier and customer service representative.  She worked at the DCH Toyota of Simi Valley dealership from approximately October 2010 to September 2015 and was paid $10/hour.  At all relevant times she was a non-exempt employee.

65.     Ms. O'Neal worked at DCH in both a full-time and part-time capacity.  In her full-time capacity, she generally worked eight to nine hours per day, six days a week.  In her part-time capacity, she would generally work four hours a day during the week and five to seven hours a day on weekends.

66.     Generally, Ms. O'Neal was not provided a 30-minute, off-duty meal break at all or, when she was provided one, it was not within her first five hours of work.  She was required to clock out for a purported meal period within the first five hours of her work day even if she was not actually taking a meal break.  That is, Defendants routinely required or suffered Ms. O'Neal to perform work off the clock.  She was never compensated for the missed meal breaks or for the labor she performed off the clock.

67.     Ms. O'Neal, like other DCH employees, had her time records altered and falsified by Defendants to falsely show that she took her meal breaks on time.

68.     Management knew Ms. O'Neal worked through her meal breaks and instilled a fear in Ms. O'Neal that she would get in trouble if she ignored a customer while she was taking a meal break because customer complaints about employees taking meal breaks were cause for employee discipline.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA 94129
(415) 398-0900

69.     Ms. O'Neal generally was not provided a 10-minute rest break for each four hours worked, or major fraction thereof.  She was never compensated for the missed rest breaks.

## MONIKA BARTELS-NEWMAN

70.     Plaintiff Monika Bartels-Newman was employed by Defendants as a head service cashier.  She worked at the DCH Toyota of Simi Valley dealership from approximately May 2010 to June 2015 and was paid $10/hour.  At all relevant times she was a non-exempt employee.

71.     Ms. Bartels-Newman worked at DCH part-time.  She generally worked four to six hours a day, but often times should would work a full shift of eight hours or more.

72.     On the days when she worked over 5 hours, Ms. Bartels-Newman generally was not provided a 30-minute, off-duty meal break within the first five hours of her shift.

73.     Ms. Bartels-Newman, like other DCH employees, had her time records altered and falsified by Defendants to falsely show that she took her meal breaks on time.

74.     Ms. Bartels-Newman was generally not provided a 10-minute rest break for each four hours worked, or major fraction thereof.  She was never compensated for the missed rest breaks.

75.     At times, Defendants required or suffered Ms. Bartels-Newman to perform work off the clock at the end of the shift, by altering her time records to indicate that she did not stay late past her usual shift time, when she actually did.

## ISABEL PARDO

76.     Plaintiff Isabel Pardo was employed by Defendants as a service assistant at the DCH Honda of Oxnard dealership from approximately November 2014 until January 2016.  Ms. Pardo was a part-time employee and was paid approximately $10/hour.  At all relevant times she was a non-exempt employee.

77.     Ms. Pardo's shifts generally lasted longer than six hours.

78.     On multiple occasions, Ms. Pardo was not provided a 30-minute, off-duty meal break and/or was not provided one within the first five hours of her workday.  She was required to clock out for a purported meal period within the first five hours of her work day even if she

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

was not actually taking a meal break.  That is, Defendants routinely required or suffered Ms. Pardo to perform work off the clock.  She was never compensated for the missed meal breaks or for the labor she performed off the clock.

79.     Ms. Pardo, like other DCH employees, had her time records altered and falsified by Defendants to falsely show that she took her meal breaks on time.

80.     Ms. Pardo was generally not provided a 10-minute rest break for each four hours worked, or major fraction thereof.  She was never compensated for the missed rest breaks.

## V.     CLASS ALLEGATIONS

81.     Plaintiffs bring this lawsuit as a class action under Rules 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class of similarly situated persons:

All current and former non-exempt and overtime exempt employees of LITHIA, DCH USA, DCH Simi Valley, and/or DCH Oxnard who, during the four years prior to the filing of this Complaint, worked at one or more of the Dealerships and:

a.     were not provided a 30-minute, off-duty meal break during any work day lasting five hours or longer and/or were not provided one within the first five hours of a work day;

b.     were not provided a 10-minute rest break during any work day during which the employee's shift lasted longer 3.5 hours or longer; or

c.     were not paid at least minimum wage for all hours worked; and or

d.      were not paid all premium pay for missed meal and rest breaks for any pay period.

82.     Plaintiffs also bring this lawsuit on behalf of the following Subclasses:

1.     The "Overtime Subclass," consisting of all members of the Class other than those whom Defendants classified as overtime-exempt, who were paid less than one-and-a-half times their usual wage for hours worked in excess of eight hours per day and/or more than six days in a work week, and/or two times their usual wage for hours

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

worked in excess of twelve hours per day, or more than eight hours on the seventh consecutive day worked during a work week.

2.      The "Commissioned Sales Subclass," consisting of all members of the Class whose compensation consisted in whole or in part of commissions (including but not limited to car salespersons and service writers/advisors) and who were classified by Defendants as overtime-exempt but who, during at least one work week during the relevant time period, did not meet the criteria for the commissioned sales overtime exemption paragraph 3(D) of the Wage Orders.

83.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class or Subclasses may be expanded or narrowed by amendment or amended complaint.  Defendants, their subsidiaries, their officers, directors, managing agents and members of those persons' immediate families, the Court, Court personnel, and legal representatives, heirs, successors or assigns of any excluded person or entity are excluded from the Class (future references to "the Class" or "Class Members" is inclusive of the "Subclasses" and "Subclass Members").

84.     **Numerosity.**  The Class for whose benefit this action is brought is so numerous that joinder of all Class Members is impracticable.  While Plaintiffs do not presently know the exact number of Class Members, Plaintiffs are informed and believe that there are over one thousand Class Members, and that those Class Members can be readily determined and identified through Defendants' files and, if necessary, appropriate discovery.

85.     **Typicality.**  Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs, like all Class Members, were victims of wage theft by Defendants resulting from the same customs, practices, and policies.  Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of unfair and/or unlawful conduct resulting in injury to all members of the Class.

86.     **Commonality.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members.  Issues of law and fact common to the Class include:

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

CLASS ACTION COMPLAINT

(a)     Whether DCH USA, LITHIA and the other defendants are joint employers of the Class Members;

(b)     Whether DCH USA and LITHIA are the alter ego of DCH Simi Valley, DCH Oxnard and other DCH California entities;

(c)     Whether Defendants had a common policy of zero tolerance for premium pay;

(d)     Whether Defendants violated the California Labor Code by failing to provide Class Members with meal breaks;

(e)     Whether Defendants violated the California Labor Code by failing to provide Class Members with rest breaks;

(f)     Whether Defendants violated the California Labor Code by failing to pay Class Members premium pay for non-provided or untimely provided meal breaks or for non-provided rest breaks;

(g)     Whether Defendants violated the California Labor Code by failing to pay overtime;

(h)     Whether Defendants violated the California Labor Code by failing to pay for all time worked;

(i)     Whether Defendants' commissioned sales persons are exempt from overtime requirements;

(j)     Whether Defendants violated the California Labor Code by failing to pay all earned wages at the time of Class Members' termination or within 72 hours of their resignation;

(k)     Whether Defendants violated the California Labor Code by failing to pay Class Members all earned wages for the pay period in which the work was done;

(l)     Whether Defendants violated the California Labor Code by failing to keep accurate records of the time worked by Class Members and by failing to provide accurate itemized statements of earnings;

(m)     Whether Defendants intentionally falsified time records;

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA 94129
(415) 398-0900

(n)     Whether Defendants by way of the conduct alleged herein, engaged in unfair acts or practices in violation of California unfair competition practices laws including, but not limited to, California Business & Professions Code § 17200, *et seq.*, for which Class Members are entitled to recover;

(o)     Whether Class Members have been damaged by Defendants' actions or conduct; and

(p)     Whether declaratory and injunctive relief are appropriate to curtail Defendants' conduct as alleged herein.

87.     **Adequacy.**  Plaintiffs will fairly and adequately represent the interests of the Class and have no interests adverse to or in conflict with other Class Members.  Plaintiffs' retained counsel will vigorously prosecute this case, have previously been designated class counsel in cases in the State and Federal courts of California, and are highly experienced in employment law, class and complex, multi-party litigation.

88.     **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since, among other things, joinder of all Class Members is impracticable and a class action will reduce the risk of inconsistent adjudications or repeated litigation on the same conduct.  Further, the expense and burden of individual lawsuits would make it virtually impossible for Class Members, Defendants, or the Court to cost-effectively redress separately the unlawful conduct alleged.  Thus, absent a class action, Defendants would unjustly retain the benefits of their wrongdoings.  Plaintiffs know of no difficulties to be encountered in the management of this action that would preclude its maintenance as a class action, either with or without sub-classes.

89.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records, or through notice by publication.

90.     Accordingly, class certification is appropriate under Rule 23.

# VI.    CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### FAILURE TO PROVIDE MEAL PERIODS
Wage Orders ¶ 11; Cal. Lab. Code §§ 226.7, 512

91.    Plaintiffs incorporate by reference the above allegations as if fully set forth herein, and further allege as follows:

92.    California Labor Code § 512 provides, in pertinent part, as follows:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.  An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

93.    Cal. Labor Code § 226.7(a) provides: "An employer shall not require an employee to work during any meal . . . period mandated pursuant to an . . . order of the Industrial Welfare Commission."

94.    Paragraph 11(A) of the Wage Orders provides, in pertinent part, as follows: "Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked."

95.    As alleged herein, Plaintiffs and the Class Members routinely and uniformly were not provided with meal periods at all or in a timely-fashion and instead were required to forego the meal periods required to be provided to them.

96.    Defendants routinely and uniformly manipulated and falsified time records to indicate that Plaintiffs and Class Members were provided with meal breaks within the first five hours of their work day when in fact they either received no meal period at all or were not provided a full 30-minute meal period within their first five hours of work.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

97.    By failing to provide Plaintiffs with these meal periods, Defendants, and each of them, violated California Labor Code sections 512 and 226.7, as well as applicable provisions of the Wage Orders.

98.    As a result of the unlawful acts of Defendants set forth herein, each Plaintiff and each Class Member has been unfairly and illegally deprived of up to two meal periods per day, and is entitled to one additional hour of premium pay for each missed meal period.

## SECOND CLAIM FOR RELIEF
FAILURE TO PROVIDE REST PERIODS
Wage Orders ¶ 12; Cal. Lab. Code §§ 226.7, 512

99.    Plaintiffs incorporate by reference the above allegations as if fully set forth herein, and further allege as follows:

100.    Paragraph 12(A) of the Wage Orders authorizes employees to take paid rest periods based on the total hours worked daily at the rate of ten minutes rest per four hours or major fraction thereof.

101.    Cal. Labor Code § 226.7(a) provides: "An employer shall not require an employee to work during any  . . . rest or recovery period mandated pursuant to an . . .  order of the Industrial Welfare Commission."

102.    Plaintiffs routinely and uniformly were not provided with the rest periods required to be provided to them, which amounted to a total of two to three rest periods per day, depending upon the actual length of the employee's workday.

103.    By failing to provide Plaintiffs with these rest periods, Defendants, and each of them, violated Paragraph 12 of the Wage Orders and California Labor Code section 226.7.

104.    As a result of the unlawful acts of Defendants set forth herein, Plaintiffs and the Class Members have been unfairly and illegally deprived of up to three rest periods per day, and are entitled to one additional hour of premium pay for each missed rest period.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA 94129
(415) 398-0900

### THIRD CLAIM FOR RELIEF
FAILURE TO PAY OVERTIME WAGES
Wage Orders ¶ 3; Cal. Labor Code §§ 510, 1194 *et seq.*, 1198

105.    Plaintiffs incorporate by reference the above allegations as if fully set forth herein, and further allege as follows:

106.    California Labor Code § 510(a) provides, in pertinent part, as follows:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

107.    California Labor Code § 1194 provides, in pertinent part, as follows:

> any employee receiving less than the . . . legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

108.    Paragraph 3(A) of the Wage Orders provides, in pertinent part, as follows:

> [E]mployees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:
> *   *   *
> (b)  Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

109.    During certain work weeks, members of the Commissioned Sales Subclass, including but not limited to Mr. Herrera and Ms. Robinson, did not qualify for the commissioned sales overtime exemption under the above-quoted provisions. For any work week in which that was the case, all such employees should have been treated by Defendants as non-exempt and paid overtime compensation.

110.    Plaintiffs and members of the Overtime Subclass and the Commissioned Sales Subclass did not receive proper compensation for all hours worked in excess of eight (or twelve) hours per day or forty hours per week, or for working more than six days in a work week.

111.    Defendants routinely and uniformly manipulated and falsified time records to indicate that Plaintiffs and members of the Overtime Subclass and the Commissioned Sales Subclass did not work overtime or did not work the amount of overtime they actually worked, when in fact they did work overtime or worked more overtime than the records were altered to indicate.

112.    By their conduct described above, Defendants, and each of them, violated, *inter alia*, the provisions of California Labor Code §§ 510, 1194, 1198, and Paragraph 3 of the Wage Orders and are therefore liable to Plaintiffs and the Overtime Subclass and the Commissioned Sales Subclass for the damages caused.

113.    As a result of the wrongful and unlawful acts of Defendants alleged herein, Plaintiffs and Subclass Members have been deprived of overtime compensation in amounts to be determined, and are entitled to recover said amounts according to proof, interest thereon, injunctive relief, attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
### FAILURE TO PAY FOR ALL HOURS WORKED
Wage Orders, ¶¶ 4(B), 11; Cal. Lab. Code §§ 221, 223

114.    Plaintiffs incorporate by reference the above allegations as if fully set forth herein, and further allege as follows:

115.    Paragraph 4(B) of the Wage Orders provides that all employers must "pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise."

116.    As described above, Defendants required Plaintiffs and the Class Members to clock out before the end of the fifth hour of their shifts to create the appearance that Defendants provided timely, off-duty meal periods.  When Plaintiffs and Class Members failed to do so,

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA 94129
(415) 398-0900

Defendants altered their time records to make it appear as if they did. Contrary to that appearance, however, Defendants required or suffered Plaintiffs and the Class Members to continue working off the clock through these purported meal periods. Pursuant to Paragraph 11 of the Wage Orders, "[u]nless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and *counted as time worked*" (emphasis added). Plaintiffs were never compensated for the time worked during their purported meal periods, in violation of Paragraphs 4(B) and 11.

117. At times Defendants likewise required or suffered Plaintiffs and the Class Members to perform work off the clock at the end of a shift. Plaintiffs were never compensated for this off-the-clock labor, in violation of Paragraph 4(B).

118. By their conduct described above, Defendants, and each of them, violated, *inter alia*, Paragraph 4(B) and 11of the Wage Orders and are therefore liable to Plaintiffs and the Class Members for the damages caused.

119. As a result of the wrongful and unlawful acts of Defendants alleged herein, Plaintiffs and Class Members have been deprived of regular and/or overtime compensation in amounts to be determined, and are entitled to recover said amounts according to proof, interest thereon, injunctive relief, attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
WAITING TIME PAY
Cal. Lab. Code §§ 201-203, 206
(On behalf of all Plaintiffs except Mr. Herrera)

120. Plaintiffs incorporate by reference the above allegations as if fully set forth herein, and further allege as follows:

121. California Labor Code § 201(a) provides, in pertinent part, as follows: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

122. California Labor Code § 202(a) provides, in pertinent part, as follows:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

123.    California Labor Code § 206(a) provides, in pertinent part, as follows:

In case of a dispute over wages, the employer shall pay, without condition, and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed.

124.    Where an employer willfully fails to pay, without abatement or reduction, in accordance with sections 201 through 203 of the California Labor Code, all wages due to an employee who has been discharged or has quit, California Labor Code section 203 entitles the affected employee to receive from the employer a penalty of up to 30 days wages calculated from the due date of the wages until the time an action to recover the wages is commenced.

125.    As alleged herein, Defendants, and each of them, have failed to pay earned wages (including but not limited to overtime compensation, premium pay for missed meal and rest breaks, and uncompensated time) to all Plaintiffs (other than Mr. Herrera) and Class Members who are former employees at the time they became due and payable, and have thus violated sections 201, 202 and 206 of the California Labor Code.

126.    Defendants' failure to pay wages as alleged herein was willful in that Defendants knew that Plaintiffs and Class Members were not receiving all of their earned compensation because, *inter alia*, Defendants knowingly failed to provide Plaintiffs and Class Members with meal and rest breaks, and instead directed and required Plaintiffs and Class Members not to take such breaks, falsified time records to avoid having to pay premium wages, failed to pay premium wages owed, and did not fully, fairly, and properly compensate Plaintiffs and Class Members for said break periods.

127.    It has been more than 30 days since the date of termination of each Plaintiff's employment (except Mr. Herrera).

128.    As a result of Defendants' willful and unlawful acts discussed herein, Plaintiffs and Class Members who are no longer employed by Defendants are each entitled to recover, pursuant to California Labor Code section 203, continuing wages as a penalty for a total of up to 30 days depending on date of termination of their employment.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

### SIXTH CAUSE OF ACTION
STATUTORY PENALTIES FOR VIOLATION OF WAGE STATEMENT AND RECORD KEEPING REQUIREMENTS
California Labor Code Section 226(b); Wage Orders ¶ 7

129.    Plaintiffs incorporate by reference the above allegations as if fully set forth herein, and further allege as follows:

130.    California Labor Code § 226(a) provides, in pertinent part, as follows:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . gross wages earned, . . . total hours worked by the employee … all deductions . . . and . . . all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

131.    Paragraph 7 of the Wage Orders provides additionally, in pertinent part, as follows:

Every employer shall keep accurate information with respect to each employee including the following:

*   *   *

(3) Time records showing when the employee begins and ends each work period.  Meal periods, split shift intervals and total daily hours worked shall also be recorded. …

(5)  Total hours worked in the payroll period and applicable rates of pay.

*   *   *

Every employer shall semimonthly or at the time of each payment of wages furnish each employee … an itemized statement in writing showing:  (1) all deductions…

132.    Defendants, and each of them, have violated the above Labor Code section and the Wage Orders with respect to Plaintiffs and Class Members by failing to keep accurate time records showing all hours worked and failing to provide accurate itemized statements of earnings and the amounts lawfully deducted from wages.

23

133. California Labor Code § 226(e)(1) provides as follows:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($ 50) for the initial pay period in which a violation occurs and one hundred dollars ($ 100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($ 4,000), and is entitled to an award of costs and reasonable attorney's fees.

134. California Labor Code § 226(e)(2)(B) provides that "[a]n employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by … subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone" the amount of gross wages or net wages paid, the total hours worked, all deductions, and/or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

135. California Labor Code § 226(h) provides, in pertinent part, as follows: "An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees."

136. Defendants violations of the Labor Code section and the Wage Orders recited above have been knowing and intentional. Among other things, Defendants have falsified Plaintiffs' and the Class Members' time records, or caused such records to be falsified.

137. As a result of the aforementioned wrongful and illegal conduct of Defendants, each Plaintiff and each Class Member herein is entitled to penalties against Defendants equal to $50 for the initial pay period for each violation by Defendants and $100 for each such violation in every subsequent pay period during the relevant limitations period.

138. As a result of the aforementioned wrongful and illegal conduct of Defendants, Plaintiffs and Class Members are also entitled to injunctive relief, costs and attorney's fees.

## SEVENTH CAUSE OF ACTION
### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST
### Cal. Civ. Code §§ 2223, 2224

139. Plaintiffs incorporate by reference the above allegations as if fully set forth herein, and further allege as follows:

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA 94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

140.   Defendants have knowingly and intentionally failed to pay Plaintiffs and the Class Members all compensation for employment that was and is due to them under the law.

141.   The work performed by Plaintiffs and the Class Members, for which they have not received full and fair compensation, was at the direction and behest of Defendants, and each of them.  Plaintiffs and the Class Members did not perform this work gratuitously, but with the expectation that they would receive wages and compensation in amounts and in a manner that fully complied with the law.

142.   Said underpaid compensation is rightfully the property of Plaintiffs and the Class Members.

143.   Defendants' retention of said underpaid wages is wrongful, inequitable and represents an unjust enrichment of Defendants, and each of them, to the detriment of the Plaintiffs and the Class Members.  In particular, it would be unjust, wrongful, and inequitable to let Defendants retain money rightfully owed Plaintiffs and Class Members for the work they performed for Defendants because Defendants falsified Plaintiffs' and Class Members' time records in order to underpay them and preserve the illusion that they were complying with California law.  Defendants' wrongful retention of such underpaid wages and premium pay makes them involuntary trustees of said property, and as such Defendants, and each of them, have a duty to re-convey to Plaintiffs and the Class Members said unpaid and underpaid wages and premium pay that are rightfully the property of Plaintiffs and the Class Members.

## EIGHTH CAUSE OF ACTION
### CONVERSION

144.   Plaintiffs incorporate by reference the above allegations as if fully set forth herein, and further allege as follows:

145.   Plaintiffs and Class Members had an ownership interest and right to possess all wages they earned by working for Defendants.

146.   Defendants wrongfully, unlawfully and willfully converted these wages by failing to pay Plaintiffs and Class Members the wages they had lawfully earned, including failing to pay

Plaintiffs and Class Members premium pay, overtime and for all hours worked as described above.

147.    Defendants willfully falsified Plaintiffs' and Class members' time records to cover up the fact that they were converting the wages they had lawfully earned.

148.    Plaintiffs and Class Members suffered damages as a result of Defendants' willful conversion by not receiving the monies they were owed.

149.    The wages earned, but not received by Plaintiffs and Class Members, because of Defendants' conversion, are easily identified by reference to time and payroll records Defendants are obligated to keep under the California Labor Code sections 226 and 1198.5.  Defendants' falsification of such records does not insulate them from a conversion claim

150.    California Civil Code Section 3294(a) provides additionally, in pertinent part, as follows:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

151.    The wrongful conversion by Defendants of Plaintiffs and Class Members' wages was done with malice, oppression, and fraud.  For example, Defendants falsified Plaintiffs' and Class Members' time records to cover up their conversion and their conversion was intended by them to injure Plaintiffs and Class Members and benefit their corporate bottom line by inflating corporate profits and illegally decreasing the income of their employees.  Plaintiffs and Class Members are therefore entitled to punitive damages against Defendants for Defendants' malicious conversion of their earned wages in addition to recovery of the wages themselves.

## NINTH CAUSE OF ACTION
### FRAUD

152.    Plaintiffs incorporate by reference the above allegations as if fully set forth herein, and further allege as follows:

153.    Defendants have fraudulently altered and falsified Plaintiffs' and the Class Members' time records to misrepresent each Plaintiffs' and Class Members' work hours and

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

create the false appearance that Plaintiffs and Class Members were provided with timely, 30-minute meal breaks, were paid overtime properly, and were paid for each hour worked. Defendants, and each of them, accomplished this false misrepresentation by altering and falsifying employees' time records.

154.    Defendants knew that their representations of Plaintiffs' and Class Members' time were false because they were aware of the hours Plaintiffs' and Class Members' actually worked and whether or not they took a meal break via the unaltered time records, but caused the records to be falsified to reflect hours which were less than those that were actually worked, and to falsely show meal breaks which were either not taken at all or taken after the first five hours of a Plaintiff's or Class Member's workday.

155.    Defendants intended to defraud Plaintiffs and Class Members by falsifying and altering their time records because they knew that by falsifying the time records it would seem as if they were paying Plaintiffs and Class Members in compliance with the Labor Code, when in fact, they were not paying Plaintiffs and Class Members for all the hours worked, for premium pay, or for overtime as required by the Labor Code.  Defendants' intentions are evidenced by the fact that they falsified time records to Plaintiffs' and Class Members' detriment.

156.    Plaintiffs and Class Members justifiably relied on Defendants' misrepresentations of their time records to their detriment because, as Plaintiffs' and Class Members' employers, Defendants, and each of them, had a duty to keep accurate and complete records of their time worked and to pay them all earned wages.

157.    Plaintiffs and Class Members were harmed by Defendants' fraudulent alteration and falsification of their time records because Defendants, and each of them, paid Plaintiffs and Class Members less than they were entitled to under the Labor Code, thus secretly and wrongfully denying them earned wages, overtime pay, and premium pay without Plaintiffs' and Class Members' knowledge.

158.    California Civil Code Section 3294(a) provides additionally, in pertinent part, as follows:

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

159.   The fraud perpetrated by Defendants was done with malice, and oppression.  For example, Defendants falsified Plaintiffs' and Class Members' time records to secretly injure Plaintiffs and Class Members and benefit their corporate bottom line by inflating corporate profits and illegally decreasing the income of their employees.  Plaintiffs and Class Members are therefore entitled to punitive damages against Defendants for Defendants' malicious fraud, in addition to the damages suffered by Plaintiffs and Class Members suffered because of the fraud.

## TENTH CAUSE OF ACTION
### VIOLATION OF UCL
### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

160.   Plaintiffs incorporate by reference the above allegations as if fully set forth herein, and further allege as follows:

161.   By their actions described in this Complaint, Defendants, and each of them, have committed unfair, unlawful and/or fraudulent business practices in violation of California Business & Professions Code section 17200 *et seq.* (the "UCL").

162.   California Labor Code § 90.5(a) states that it is the public policy of California to vigorously enforce minimum labor standards in order to ensure that employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those employers who try to gain competitive advantage by not so complying, at the expense of the health, safety and welfare of their employees.

163.   As set forth above, Defendants, and each of them, have failed and refused to provide timely, off-duty meal periods to their employees; failed and refused to provide rest breaks; failed and refused to compensate employees for such missed or untimely breaks; failed to properly pay employees for all hours worked; failed to properly pay overtime; and failed to timely pay all wages earned at the time of termination.  As a result of these actions, Defendants

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA 94129
(415) 398-0900

have engaged in unfair competition within the meaning of the UCL because their conduct has violated state wage and hour laws and policies, including but not limited to Labor Code sections 201, 202, 221, 223, 226, 226.7, 510, 512, 1194 *et seq.*, 1198 and Paragraphs 3, 4, 7, 11, and 12 of the Wage Orders.

164. In addition, it has been Defendants' custom, policy and practice to fail and refuse to pay Plaintiffs and the Class Members all earned wages at the time such wages became due and payable. Specifically, Defendants, and each of them, have failed to timely pay earned wages (*e.g.*, overtime compensation and premium pay for missed or untimely meal breaks and for missed rest breaks) as required by Labor Code section 204. This conduct likewise constitutes unfair competition.

165. Defendants, and each of them, have fraudulently altered Plaintiffs' and the Class Members' time records to create a false appearance that Plaintiffs and the Class Members were provided with timely, 30-minute meal breaks, were paid overtime properly, and were paid for each hour worked.. Such conduct flagrantly violates Labor Code section 226 and Paragraph 7 of the Wage Orders. Plaintiffs reasonably relied on Defendants to keep accurate and complete records of their time worked and to pay them all earned wages. They were harmed by Defendants' destruction and falsification of time records. Defendants' conduct as alleged in this paragraph therefore also constitutes unfair competition and fraud under the UCL.

166. Defendants' conduct as described herein has been anti-competitive and injurious to Defendants' competitors who complied with the laws and policies violated by Defendants, as Defendants' conduct provided an unfair and illegal advantage in the marketplace as a result of, *inter alia*, paying less for the labor of their employees than required by law.

167. The foregoing conduct by defendants, and each of them, has injured each Plaintiff and Class Member by, *inter alia*, wrongfully denying them earned wages, overtime pay, and premium pay. As such, Plaintiffs and the Class Members are entitled to restitution and injunctive relief.

168. Wherefore, Plaintiffs pray for relief and judgment as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment in their favor and relief against Defendants, and each of them, as follows:

(a)     For injunctive relief restraining further acts of wrongdoing by Defendants;

(b)     For compensatory damages, including, without limitation, lost wages and premium pay, in an amount to be determined at trial, but at least $5 million;

(c)     For statutory penalties;

(d)     For interest, at the legal rate;

(e)     For imposition of a constructive trust over all amounts by which Defendants have been unjustly enriched;

(f)     For restitution of all amounts Class Members have been unlawfully denied as a result of Defendants' unfair and unlawful business practices;

(g)     For punitive and exemplary damages;

(h)     For attorneys' fees and costs; and

(i)     For all such other and further relief as the Court may deem just, proper and equitable.

Dated: August 29, 2016                    PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


By: _/s/ Nicholas A. Carlin_____
     Nicholas A. Carlin
     Attorneys for Plaintiffs


**DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury of all issues so triable.

Dated: August 29, 2016                    PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


By: /s/ Nicholas A. Carlin
     Nicholas A. Carlin
     Attorneys for Plaintiffs

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

CLASS ACTION COMPLAINT